# LAW OFFICES OF LORI COHEN, ESQ.

*A Professional Corporation*

<u>**Via ECF and Federal Express**</u>

Hon. George B. Daniels                                 November 27, 2018
United States District Court Judge
Southern District of New York
40 Foley Square
New York, N.Y.  10007

Re:  <u>*United States v. Adam Toro*</u>
17 CR 674 (GBD)

Dear Judge Daniels:

This letter is respectfully submitted in connection with the sentencing of Adam Toro, which is currently scheduled to occur on December 11, 2018 at 11a.m., and in support of his request for a non-guidelines sentence below the estimated range calculated by the Probation Department.  Such a sentence is warranted in this case in recognition of Mr. Toro's remorse, his role in the underlying criminal activity, and his own personal circumstances, including the serious illness of his father and his adjustment to supervision.

## Preliminary Statement

Mr. Toro stands before the Court as a hard working man who has totally changed his life – in part due to his father's incapacitation and in part due to the intervention of supervised release pursuant to this case.  Indeed, he is an example of how much intervention can alter the course of a person's life if they are open to the task.  Mr. Toro has demonstrated he is open to the task and has proven that he can be trusted to live in society drug free, crime free and as a working, productive member of society. He has removed himself from his past criminal activity and has commenced a new life – he has a job, responsibilities and a family life that is far different from the life he led during the time of his activities in this case.  Mr. Toro is now a well-respected member of his community and the caring son who tends to his incapacitated father.  Mr. Toro is remorseful and deeply regrets the manner in which he led his earlier life, but his changed life mitigates in favor of a non-incarcetory sentence – one that credits Mr. Toro's changes and positive adaptation to supervision, and the positive future that he has created for his family.

This Court's "overarching statutory mandate" is to impose the minimum sentence sufficient to serve the purposes of sentencing. *Kimbrough v. United*

*States*, 128 S.Ct. 558, 570 (2007).  I write to assist and inform the Court pursuant to that mandate.  I urge the Court to consider the lack of any violence in this matter, Mr. Toro's involvement, his successful adaptation to supervision (including overcoming marijuana addiction and finding and holding full time employment) and his family situation as mitigating factors in sentencing.

### Mr. Toro's Background

Mr. Toro was born in New York County, NY on September 23, 1989. When he was seven, Mr. Toro's parents separated, and the family's financial situation changed drastically.  Mr. Toro was taken out of private school and sent to public school, a move his mother describes as

> "the biggest mistake I ever made with Adam, as he was then able to get to know people in the neighborhood as the majority of them attended the neighborhood school and weren't the best influences."
> *see*, Exhibit B, letter from Rebecca Toro.

Mr. Toro's mother, a single mom who worked several jobs to support her three children, primarily raised Mr. Toro.  The family struggled financially, but remained very close.

Mr. Toro graduated high school start working to help his mother support the family.  It became clear to Mr. Toro that even with a high school diploma is was going to be difficult to get a "well-paying job."  Instead of continuing to search, Mr. Toro took the easy way out.  He says

> I admit I was acting though greed, being selfish and not using my full potential as a person to do good for society.  My financial situation took a toll on me and I made the worst decisions.  I looked for an easy way out which is never the answer....*see*, Exhibit A, Letter of Adam Toro.

Mr. Toro's decision making abilities were further clouded by his drug use.  At twelve, he began using marijuana on a daily basis and continued to do so until his arrest in January 2018.  He also used PCP several times a week. (PSR ¶89)  It was Mr. Toro's misguided attempts to help support his family,

along with the effects of daily marijuana use, that led to his serious misjudgment in this case and several others during the same time period.

## The Crime

Mr. Toro was friends with several other young men in his neighborhood, many of whom were looking for a way to earn some money.  Mr. Toro tried to get a regular job, but his lack of any marketable skills compounded by his daily marijuana use led to little or no opportunities.  His friends were young, impressionable, looking for a way to earn some money with little education and training.  They were introduced to bank frauds and were simply not mature enough to think about the consequences of their actions for themselves, but also to consider the consequences of their actions.

## Mr. Toro's life turns around – post criminal activity

On September 19th of 2017, Mr. Toro's father suffered an "Acute Bilateral POCA stroke, and was hospitalized at Montefiore Medical Center until December 1, 2017." *see*, Exhibit C, letter from Dr. Atual Chowdhury, Eric Toro's treating physician. Mr. Toro spent most of the time from September 19th to December 1st at this father's beside.  In December 1st, his father was sent to New Gouverneur Hospital for ongoing rehabilitation and recovery. During this time, Mr. Toro also spent several nights a week at the rehab center, caring for his father.

Since his father's return home on June 2, 2018, Mr. Toro has been one of his father's primary caregivers, spending at least two nights a week at his father's home.  This is necessary, given the family's limited financial means.

> Adam Toro has been an important member of (his father's) caregiving team.  Adam has stayed with (his father) at least two nights per week delivering care, as (his father) is wheelchair bound and requires assistance with his Activities of Daily Life.  Adam has demonstrated his is both willing and capable of providing care to (his father) at his home and

> continues to accompany (his father) to our offices for
> on-going medical care.  *see*, Exhibit C, letter from Dr.
> Chowdhury.

Between his father's stroke and the soul searching and responsibilities the infirmity brought along his own arrest in this case, Mr. Toro matured enough to take stock in his own life.  He immediately began to become one of his father's main caretakers, he took his sobriety seriously and realized that life was meant to be lived a certain way.

> Throughout the time that I have been out on bail, it
> has given me the opportunity to think about my
> actions and where I went wrong.  I now see that
> instead of doing the right thing as I was brought up to
> do by my parents, I was just hurting people through
> my actions and taking the easy way out of my
> problems....I have been working on building closer
> relationships with my family and those peers who
> encourage me to do right and make better decisions
> for myself.  I have a disabled father who suffered a
> stroke a year ago, who I have taken a huge
> responsibility for and taken care of multiple days a
> week.....I have obtained legal employment and feel
> good about being a positive attribute to my
> community....with the help of my pre-trial officer, who
> pushed me to do the right thing, I have stopped
> smoking marijuana and no longer participate in any
> illegal drug use.....it feels great being able to live my
> full potential each day and I have become an example
> for many people around me.....*see*, Exhibit A, letter of
> Adam Toro.

Others in his life have noticed Mr. Toro's newfound attitude and maturity. His stepfather, George Jimenez notes

> Adam has been taking care of his father that has a
> stroke and is incapable of moving around for the past
> year.  I have seen Adam mature since this happen to
> his father and have seen him grow into a very
> responsible young man.  I've seen his character do a

> total 360 and his use his great qualities toward more positive things and towards shaping himself into a better man.  His growth has been amazing he is hard working, responsible, caring and selfless and has let go of so many unhealthy habits.  *see*, Exhibit B, letter of George Jimenez.

Mr. Toro's sister, Lauren, a RN has also written about how much Adam is necessary for his father's care and has also noticed the changes in Adam.

> I feel as though the two of together is what holds this family together.  We are the caregivers of many people in our family including my grandmother and our father who had a stroke last year.  Since then it has been a very difficult journey to recovery and Adam has stepped up to so greatly help.  He helps our father with activities of daily living and stays with him multiple days of the week to watch over him because he is now immobile and dependent.  He improves my father's quality of life so much.  I understand the trouble my brother is in and we have spoke about his regrets many times.  I see the changes in his already.  In just his time being out on bail he has grown so much as a person....he regrets his wrongdoings and always talks about it, it is the biggest mistake he's ever made....I do not think society would benefit in Adam's absence at all because he is a family man and is the backbone for many people and is a person who always wants to help others.  I can't imagine how hard things will be without him.  *see,* Exhibit B, Letter of Lauren Toro.

Jose Nicot, a lifelong friend of Mr. Toro's father notes

Since Adam's father suffered a debilitating stroke in September of 2017, I have borne personal witness to Adam's efforts to provide caregiving services to him on a constant and consistent basis.....notwithstanding the many legal challenges Adam is facing today, he has found time to be with his father every week and has stayed with him consistently on an overnight basis to attend to his needs.  Adam has displayed real courage and tenacity in attending to his father's condition and has demonstrated a maturity and emotional

intelligence in dealing with his father that is rare in young people today.  *see*, Exhibit B, letter of Jose Nicot.

Lastly, and perhaps most importantly, objective individuals have noted in Mr. Toro's treatment summaries that Mr. Toro has not only been reporting to the program as directed and is fully compliant with treatment, but note that Mr. Toro has displayed "a serious interest in changing his life."  (PSR ¶89).

Mr. Toro's growth is demonstrated not just as a platitude that a defendant facing imprisonment sends to a Court – his growth is demonstrably proven by his actions since his arrest.  These actions should demonstrate to this Court that supervision has worked for Mr. Toro and that the Court does not need to send Mr. Toro to jail in order to fulfill the requirements of sentencing, including keeping society safe.  I submit that Mr. Toro's actions after his arrest more clearly reflect his true character.  Those who know him well, for a period of time, all believe that he is a good person, of good morals, who made horrible decisions often compounded by the haze of marijuana. They all believe he has changed – and he has had the good fortune of being able to demonstrate to the Court that the change was real.  His family relies on Mr. Toro to provide substantial care to his father – a void that the family will never be able to fill.

## Sentencing

It is well established that the United States Sentencing Guidelines ('the guidelines") are now advisory rather than mandatory.  *see, United States v. Booker and United States v. Fanfan,* 543 U.S. 220, 125 S.Ct. 738 (2005).  As the Court has explained, in determining what sentence to impose a judge must consider all of the factors set forth in 18 U.S.C. §3553(a);  the guidelines are merely one factor to be considered together with all of the other relevant sentencing factors outlined in 18 U.S.C. §3553(a).  *Booker, supra*, 125 S.Ct. @ 764-765.  The Supreme Court has made it clear that the district courts must make an "individualized assessment" based upon all the 18 U.S.C. §3553(a) factors. *Gall v. United States*, 128 S.Ct. 586 (2007) @ 597.

In imposing sentence, this Court must consider the factors set forth in 18 U.S.C. § 3553(a), which include:
(1)    the nature of and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed –
   (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B)   to afford adequate deterrence to criminal conduct;
   (C)   to protect the public from further crimes of the defendant; and
   (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;
(4)   the advisory Guidelines range;
(5)   any pertinent policy statements issued by the Sentencing Commission;
(6)   the need to avoid unwarranted sentence disparities; and
(7)   the need to provide restitution to any victims of the offense.

*Id.* After considering all of those factors, this Court must "impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in paragraph (2)." *Id.* (Emphasis added). As set forth herein, Mr. Toro has demonstrated that supervision has and will continue to help effectuate all of the sentencing factors.

## The Sentencing Guidelines

The Probation Department calculates the advisory sentencing guidelines as having an adjusted Offense Level of 19. (PSR at ¶19). The PSR concludes that the total Offense Level is 16. *(*PSR @ ¶60).

Mr. Toro's criminal history points result in a criminal history score of four, with two points added for criminal conduct while Mr. Toro was probation. The total criminal history points are 4 and the category is III. (PSR @ ¶69). The applicable guideline range is 27 – 33 months.

## a)   The Factors of 18 U.S.C. §3553(a)

As set forth above, the so-called "parsimony clause" of 18 U.S.C. § 3553(a) requires this Court to impose a sentence which is "sufficient, but not greater than necessary" to satisfy the factors set forth in 18 U.S.C. § 3553(a)(2). If this Court were to "conclude that two sentences equally served the statutory purpose of §3553, it could not, consistent with the parsimony clause, impose the higher." *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006).

1) **Nature of the Offense and Character of the defendant:**

Mr. Toro's history and character have already been discussed, as have the particulars of the crime. The application of the particulars of Mr. Toro's situation to the factors in §3553 demonstrates that Mr. Toro is not a threat to society and that a non jail sentence would be well within the statutory framework. Mr. Toro has lived through several life altering events – the stoke to his father and arrest on a federal criminal indictment. He has demonstrated through his actions since his arrest that he understands the severity of his actions, that he is remorseful for them, and that he understands the causes of his actions and has been on a path to cease his drug use and live a law abiding life. He has shown the Court that he can be trusted to be a productive, law abiding member of society. People in his life have come to depend on him for life giving care and he has met that responsibility with flying colors. Incarceration is not required to have him lead a law abiding, productive life.

2) **The need for the Sentence imposed to: Reflect the seriousness of the offense, to promote respect for   the law, to provide for punishment for the offense, afford adequate deterrence to criminal conduct and to protect the public from further crimes by the defendant:**

Mr. Toro is now almost thirty years old. He is a care giver to his father, and has learned the difficult lesson that poor decisions, no matter how well motivated, have lasting repercussions.

It is a well established fact - acknowledged not only by countless criminological studies and court decisions but also by the Sentencing Commission itself - that recidivism rates drop sharply as an individual passes through middle age and continue to diminish thereafter. According to a United States Sentencing Commission Report released in May, 2004, "Recidivism rates decline consistently as age increases. Generally, the younger the offender, the more likely the offender

recidivates." *see,* U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at 12[1].  A companion Sentencing Commission Report further elaborates and confirms these findings, citing a "long-established high empirical correlation between age and recidivism." *see,* U.S.S.C. *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score*  at p. 8.[2]  That report also notes that the Commission has failed to include age as a salient factor in determining the Criminal History Category under the Guidelines (*Id*).

The Courts have interpreted such findings as establishing that "the positive correlation between age and recidivism is impossible to deny. *US v. Nellum*, 2005 WL 300073 (N.D. Ind.).  Under § 3553(a)(2)( c) (protect[ing] the public from further crimes of the defendant), the age by which the offender will be released  is therefore plainly relevant to the question of the appropriate sentence to impose.  See also *United States v. Booker, supra,* 543 U.S. at 260.

In addition, the very fact that Mr. Toro will have a felony conviction has vast consequences to his life.  While clearly jail is more punitive, the very fact of a felony conviction gives rise to a serious punishment that cannot be discounted. A number of federal courts of appeal have upheld the relevance of collateral consequences to a determination of "just punishment" and the need for deterrence under 18 U.S.C. § 3553(a), allowing them as a basis for varying downwards from the guidelines range.  {*see, United States v. Stewart,* 590 F. 3d 93, 141 (2d Cir. 2009).  The court commented that "[i]t is difficult to see how a court can properly calibrate a 'just punishment' if it does not consider the collateral effects of a particular sentence."} {*see*, also US Government Accountability office discussion of 614 collateral consequences of non violent drug convictions – most of which are applicable        to        non-violent        fraud        convictions.  https://www.gao.gov/assets/690/687004.pdf}

To argue that a felony conviction alone will not punish Mr. Toro is to simply ignore the reality of the collateral consequences.  Additionally, if this Court is concerned with the general

---

1       http://www.ussc.gov/publicat/Recidivism-General.pdf.
2       http://www.ussc.gov/publicat/RecidivismSalientFactorCom.pdf

deterrence aspect of the sentence, a sentence of home confinement, where the community can see the punishment is far more of a deterrent than one where the defendant is away from the community. Home confinement would be a daily reminder to Mr. Toro and those in his community of the perils of criminal behavior.

Given Mr. Toro's age and family situation, it is highly unlikely that he would re-engage in any criminal activity and indeed, he has demonstrated that he will not – living a law abiding, drug free life for the past year.

3) **The kind of sentences available**:  There is no mandatory minimum applicable to this charge, hence, the Court has great leeway with sentencing.

4) **The sentencing guidelines and policy statements and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct:**  Many of Mr. Toro's co-defendant's have pled guilty and been sentenced. While all have received a jail sentence, each of those defendant's had circumstances that set them apart from Mr. Toro. Brown, Jones and Guillermo have pled guilty to crimes that carry a two year mandatory minimum – a crime that Mr. Toro has not been required to pled guilty to.  Hence, their two year sentences reflect the seriousness of their crimes.  Other defendants have  much higher criminal history points (Dalton) or have violated their terms of pretrial release and been remanded into custody prior to sentence (Torres and Godbold).  Indeed, even with his violation of supervised relase, the Court sentenced Mr. Goldbold to a year and a day.

Mr. Toro has several compelling personal reasons why he shold receive a non-incarcetory sentence.  He has changed his life – he has demonstrated that he can abide by pretrial services (despite several dirty urines for marijuana – which has ceased).  He has procured lawful employment.  He is one of the primary caretakers of his father who is wheelchair bound.  He has demonstrated a true understanding of the consequences of his actions and that change in his life was required – he has not only 'talked the talk' that the Court often hears, but through his deeds and actions he has demonstrated to the Court that he has changed, he can be counted on to live a law abiding life, that he can

remain drug free that he can be a model citizen. There are certainly mitigating circumstances of a kind and degree that mitigate in favor of leniency for Mr. Toro.

## A Reasonable Sentence

In a post *Booker* environment, where the sentencing guidelines are no longer mandatory, the decision on what sentence to impose is often the most difficult question to answer.   *Booker* requires the district court to tailor sentences to reflect an application of the 18 U.S.C. §3553(a) factors, with the expectation that post-*Booker* sentences will achieve more "individualized justice."  *see, United States v. Crosby,* 397 F.3d 103, 114 (2nd Cir. 2005).

It is respectfully submitted that a prison sentence is not necessary to achieve the goals of specific or general deterrence in this case.  Mr. Toro is not a prominent figure and this case has not achieved any notoriety.  Therefore, sentencing Mr. Toro to a prison term will not send a message that any others will realistically receive. Indeed, as set forth above, if gteh Court wishes to send a message, home confinement, where Mr. Toro can been seen by the community would be far more impactful.

Mr. Toro's lawful employment reflects the fact that he is capable of hard work and lawfully providing for his family.  His poor judgment when faced with economic hardship is no excuse for his behavior;    a jail senence, however,  is not necessary to protect the public against future criminal conduct by Mr. Toro, nor is a prison term necessary to rehabilitate him – he has demonstrated to the Court through his own actions that he is rehabilitated and dedicated to a long productive life.  Incarcerating Mr. Toro not only affects him, but endangers his father who relies on Mr. Toro's care

## Conclusion

In the final analysis, this is a non-violent crime.  Mr. Toro has not only demonstrated remorse, but his personal growth and his behavior over the past year are  amore accurate reflection of his true character than the slice of life reflected in his criminal behavior.  Mr. Toro's position and reputation for good character amongst his family and community further demonstrate that this behavior is in his past.

I have heard judges say that sentencing is one of the most difficult tasks a judge must perform.   Thoughtful sentencing requires a variety of skills, including the interpretation of a crystal ball relating to a defendant's future conduct.   In this case, Mr. Toro has made the Court's task a bit easier by providing a test of sorts – for the past year, Mr. Toro has worked, has legitimately supported his family, avoided contacts with the criminal justice system and lived the type of life we all hope he can.   In essence, he has demonstrated to the Court that the Court's trust in him has not been in vain and will not be in vain.   Jail is not required to further punish Mr. Toro.  Mr. Toro will not go unpunished – he will have a felony conviction on his record for the rest of his life as a reminder of the ways one's life can go wrong when judgment is not exercised in a prudent manner.   It will also be a reminder of the lesson that Mr. Toro learned the hard way– there are not short cuts;  life is won through hard work,  perseverance and living by the rules.

In light of the above, it is respectfully requested that the Court consider a sentence that will keep Mr. Toro with his family on his path to productivity. Such a sentence would also demonstrate that our courts and system of justice can mete out individualized justice and distinguish between non violent offenders such as Mr. Toro and those violent criminals who must be incarcerated for the physical protection of society.

On behalf of Mr. Toro, I thank you for your consideration.

Dated: New York, New York
        November 27, 2018

                                        Respectfully submitted,

                                        Lori Cohen